NIEMEYER, Circuit Judge,
dissenting:
During the course of this Ponzi scheme, Simmons obtained money through wire fraud and securities fraud from investing customers and used a portion of the money so obtained — the proceeds of the fraud — to return $150,000 to James Bazluki and $16,000 to Till Lux in an effort to conceal the fraud he had committed on them. By so investing the proceeds of the fraud, Simmons was able to engage in additional fraud from which he obtained additional proceeds, because the payments to Bazluki and Lux deflected potential suspicion that otherwise might arise with respect to his initial fraudulent transactions.
Under these facts, when Simmons returned money to Bazluki and Lux, he engaged in “transactions” that constituted money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i) (prohibiting financial transactions involving the “proceeds of specific unlawful activity” (i.e., in this case, wire fraud and securities fraud)). And the fraud committed by Simmons in obtaining investors’ money was a distinct, antecedent crime, completed when Simmons received the money. In these circumstances, I submit, the two crimes (money laundering and wire or securities fraud). did not merge so that Simmons was subjected to punishment twice for the same conduct. See United States v. Santos, 558 U.S. 507, 517, 128. S.Ct. 2020, 170 L.Ed.2d 912 (2008) (observing that a “merger problem” would allow prosecutors, in their discretion, to seek the higher penalty for the two merged crimes or both penalties); United States v. Halstead, 684 F.3d 270, 278-79 (4th Cir.2011).(same).
Disagreeing with the majority’s analysis, I would conclude that the payments to Bazluki and Lux were not the “essential expenses” of Simmons’ wire fraud. See Santos, 553 U.S. at 528, 128 S.Ct. 2020. The wire fraud did indeed have expenses in marketing and selling the scheme and paying employees to work the office. But once the fraudulent statements were made to customers and the customers sent money to Simmons based on the statements, the fraud was complete, and Simmons would then be punishable for violating'the wire fraud statute, 18 U.S.C. § 1343. The subsequent payments back to the investors, who had earlier been defrauded, were not expenses of the fraudulent act — they were not necessary as a matter of fact or law. Rather, they were acts of money-laundering that indeed would have the ef- *330 feet of covering up the fraud and thus promoting future frauds.
Our decision in' United States v. Cloud, 680 F.3d 396 (4th Cir.2012), makes clear the distinction between an expense of the fraud and a payment to conceal the fraud and promote future frauds. In Cloud, the proceeds of the fraud were paid to employed recruiters, as coconspirators of the defendant, who helped perpetuate the fraud. Id. at 408. We noted that the payments to these recruited coconspira-tors were the “essential expenses of Cloud’s underlying fraud, thus presenting a merger problem.” Id. at 407. We thus found it essential that the payments be made to conspiring employees, distinguishing those payments from payments made to investors for cover-up and future frauds. As we stated:
In utilizing monies from previous properties to finance future purchases, Cloud was not paying the “essential expenses” of the underlying crime.
Cloud, 680 F.3d at 408; see also United States v. Abdulwahab, 715 F.3d 521, 531 (4th Cir.2013) (likewise holding that payments made to the defendant’s agents for “services that played a critical role in the underlying fraud scheme” were essential expenses of the fraud and recognizing the distinction made in Cloud that payments to nonparticipating persons to promote future frauds were not “essential,expenses”).
In this case, Bazluki and Lux were not recruiters, confederates, or coconspirators in the fraudulent scheme. To the contrary, they were innocent victims of Simmons’ wire or securities fraud, and the payments made to them were to cover up Simmons’ past fraud and promote future fraud. Simmons’ ability to obtain investments based on fraudulent statements subjected him to punishment under 18 U.S.C. § Í343, as well as 15 U.S.C. § 78j(b), and his payments of the fraudulently obtained monies to victims of .the fraud were separate “transactions” that subjected him to punishment for money laundering under 18 U.S.C. § 1956(a)(l)(A)(i). In this circumstance, there is no risk of penalizing Simmons twice for the same conduct.
The majority could only make its analysis work if Simmons were convicted of some single crime prohibiting a Ponzi scheme because under a Ponzi scheme, the proceeds from earlier fraudulent transactions are used to engage in future transactions. But Simmons was not charged with a crime prohibiting a Ponzi scheme; he was charged with committing distinct crimes of wire fraud, securities fraud, and money laundering, and his payment of monies to investors who had already been defrauded was not an expense of the fraud; it was a transaction of money laundering.
Accordingly, I would not find that a merger problem exists in this case and would affirm on all counts.